# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FREEDOM OF THE PRESS
FOUNDATION,
49 Flatbush Avenue #1017
Brooklyn, NY 11217

   *Plaintiff,*

v.

DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530

   *Defendant.*

CIVIL ACTION NO. 25-cv-02021

**COMPLAINT**

## PRELIMINARY STATEMENT

1. Plaintiff Freedom of the Press Foundation ("Plaintiff" or "FPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of Justice ("DOJ") to meet its legal obligations and disclose documents requested. Specifically, Plaintiff is seeking documents related to the search of Washington Post reporter Hannah Natanson's home in January 2026.

2. To date, Defendant has failed to make a determination regarding Plaintiff's FOIA request, to disclose any of the requested documents within the time stipulated under FOIA, or to provide any date when such documents will be disclosed.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6. This Court has the authority to award reasonable costs and attorneys 'fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7. Plaintiff, Freedom of the Press Foundation, is a national non-profit section 501(c)(3) organization dedicated to press freedom, government accountability, and the public's right to know. FPF regularly submits FOIA requests to gather information to educate the public about matters key to its mission, including government corruption and secrecy. The organization is incorporated under the laws of California. FPF also regularly publishes a newsletter which details updates and news related to its mission, including stories related to FOIA documents FPF obtains.

8. Among other public interest projects, FPF in 2023 announced the creation of the Daniel Ellsberg chair on government secrecy, a new position focusing on highlighting and fighting the many ways the government keeps secrets – from the press, the public, and congressional overseers. In furtherance of this program, Lauren Harper, FPF's first Daniel Ellsberg Chair on

Government Secrecy, submitted the FOIA requests at issue in this matter and has generated original reporting on the subject matter.[1]

9.　Defendant DOJ is an agency of the United States under 5 U.S.C. § 552(f)(1). DOJ is located at 930 Pennsylvania Ave, N.W., Washington, DC 20530, and has possession and control over the records Plaintiff has requested.

10.　The Office of Legal Counsel ("OLC"), the Attorney General ("AG"), and the Executive Office for U.S. Attorneys ("EOUSA") are components of DOJ.

11.　Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA.　Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

## STATEMENT OF FACTS

12.　At 6:05 AM on January 14, agents from the FBI raided the Virginia home of Washington Post reporter Hannah Natanson. They seized her official Washington Post laptop, phone, and several other devices.[2]

13.　Soon after, the government issued a grand jury subpoena to the Washington Post requesting substantially the same information it sought with the search warrant served on Ms. Natanson.[3]

---

[1] *See* Lauren Harper, *FBI Raid on WaPo Reporter's Home Was Based on Sham Pretext*, THE INTERCEPT (Jan. 15, 2026), https://theintercept.com/2026/01/15/fbi-raid-washington-post-journalist/; *see also* Lauren Harper, *FOIA shows DOJ rollback of media protections is based on a lie*, THE CLASSIFIEDS (Jan. 18, 2026), https://freedom.press/the-classifieds/foia-shows-doj-rollback-of-media-protections-is-based-on-a-lie/ (FPF newsletter discussing Natanson raid and DOJ media policy in context of ODNI document obtained under FOIA).
[2] Perry Stein & Jeremy Roebuck, *FBI Executes Search Warrant at Washington Post Reporter's Home*, Wash. Post (Jan. 14, 2026), https://www.washingtonpost.com/national-security/2026/01/14/washington-post-reporter-search/.
[3] *In re Search of the Real Property & Premises of Hannah Natanson*, No. 1:26-SW-00054 (WBP), 2026 WL 510727 (E.D. Va. Feb. 24, 2026), aff'd, No. 1:26-SW-00054 (WBP-AJT), 2026 WL 1458902 (E.D. Va. May 4, 2026) [*hereinafter In re Natanson*].

14. The FBI claimed that the raid and subpoena were part of an investigation into a government contractor accused of illegally retaining classified government materials.[4]

15. Hannah Natanson is a prolific reporter at the Washington Post, and many of her stories over the past year covered the Trump Administration's firings of government workers, handling of national security matters, and diplomatic efforts.[5]

16. In her reporting, Ms. Natanson has frequently relied on government sources.[6]

17. In March 2026, Natanson was honored with the Pulitzer Prize for her work "piercing the veil of secrecy" of the Trump administration's overhaul of the federal government.[7]

18. Experts have stated that the FBI's raid on Natanson's home was unprecedented and would have widespread ramifications, making it more difficult for reporters to obtain essential confidential sources and more legally costly to publish stories that rely on those sources.[8]

19. Because of the importance of protecting journalism, the United States has robust laws that are designed to prevent these kinds of law enforcement actions against journalists.

20. Privacy Protection Act of 1980 ("PPA"), for example, explicitly restricts the government from searching and seizing reporters' work materials. Yet the FBI purposefully seized Hannah Natanson's work laptop.

---

[4] Stein & Roebuck, *FBI Executes Search Warrant*, supra.

[5] *Id*.

[6] *Id*.

[7] Erik Wemple, *First, the F.B.I. Searched Her Home. Then, She Won a Pulitzer.*, N.Y. Times (May 5, 2026), https://www.nytimes.com/2026/05/05/business/media/hannah-natanson-washington-post-pulitzer.html.

[8] Emily Vespa & Chris Young, *Journalists Say Unprecedented FBI Raid on Reporter's Home Will Have "Widespread Ramifications,"* Reps. Comm. for Freedom of the Press (May 3, 2026), https://www.rcfp.org/natanson-fbi-search-reporter-survey/.

21. When attorneys for the Washington Post and Ms. Natanson filed suit, they asked the government not to review the seized material and to preserve the status quo until the court could address their arguments. The government refused and declined to take any position on a protocol to protect either the attorney-client or the First Amendment privileges.[9]

22. On February 24, 2026, Magistrate Judge William B. Porter blocked the government from searching Ms. Natanson's computer.[10]

23. Judge Porter was skeptical of the Administration's argument that the laptop and other materials had been seized only because of the investigation of the government contractor. Instead, the judge tied the search of Ms. Natanson's home and seizure of her devices to the Trump Administration's larger pattern of disproportionate investigative response to reporting on unclassified government information against government employees.[11]

24. As Judge Porter said, "Since early 2025, the administration has attempted to identify federal employees who disclose government information to the press. That campaign has spanned multiple departments, employed tools ranging from internal investigations to polygraph examinations, and culminated in formal changes to federal regulations governing the press. The scope of the administration's efforts has extended beyond classified or sensitive national security information."[12]

---

[9] *In re Natanson*, at *3.

[10] *In re Natanson*.

[11] *Id*., at 1-3.

[12] *Id.*, at 1-2 (citing Marisa Taylor *et al., Trump Officials Are Using Polygraph Tests to Flush Out Even Minor Leaks*, REUTERS (May 23, 2025, at 03:33 EDT), https://perma.cc/VF79-QXBC.).

25. Judge Porter called the government out on its "failure to identify and analyze the Privacy Protection Act of 1980," and stated that "this omission has seriously undermined the Court's confidence in the government's disclosures in this proceeding."[13]

26. The PPA is essential for the safety of journalists and their sources, and the DOJ's purposeful omission of this law from the judicial warrant application process directly impacts FPF's ability to effectively advocate for its constituents and leaves the press vulnerable to potential abuse.

27. Because it is concerned about these serious privacy concerns, FPF submitted several related FOIA requests to DOJ's components.

Plaintiff's FOIA Requests

28. On January 16, 2026, FPF submitted its first request ("First Request") to the Attorney General via portal.  Specifically, FPF requested *"All records created between December 24, 2025 and the date this request is processed regarding the decision to search Washington Post reporter Hannah Natanson's home on January 14, 2026, including but not limited to: Copies of any requests to the Attorney General for authorization to apply for a search warrant to search Natanson's premises, property, or communications records and any authorization for any such requests by the United States Attorney or Assistant Attorney General responsible for the matter pursuant to 28 C.F.R. § 50.10(d)(1). Copies of any records reflecting the authorization of the Attorney General to apply for a search warrant to search Natanson's premises, property, or communications records pursuant to 28 C.F.R. § 50.10(d)(1)."*

29. In its First Request, FPF asked for news media fee status, as well as expedited processing.

---

[13] *In re Search of the Real Property & Premises of Hannah Natanson*, No. 1:26-sw-00054, ECF No. 62, at *5 (E.D. Va. Feb. 24, 2026).

30. On January 22, 2026, via email, the Attorney General acknowledged receipt of the First Request and assigned it tracking number FOIA-2026-01340 (OIP). In the same communication, the Attorney General denied FPF's request for expedited processing.

31. On February 23, 2026, FPF submitted its second request ("Second Request") via portal, to EOUSA, seeking "*All records, including but not limited to internal memoranda, policy manuals, and legal guidance, regarding the Department's requirements for disclosing the Privacy Protection Act of 1980 to magistrate or district judges during warrant applications. This request specifically seeks any policy or guidance relied upon by Assistant U.S. Attorney Gordon D. Kromberg concerning the search of Washington Post reporter Hannah Natanson's residence. Please keep in mind that according to The New York Times February 20, 2026, article "Judge Rebukes U.S. Over Application to Search Reporter's Home" that Kromber informed Judge William B. Porter of the Eastern District of Virginia on February 20, 2026, that he "had known about the [PPA], but also said he had been following department policy in not bringing it to the judge's attention.*"

32. EOUSA acknowledged receipt of FPF's Second Request via email on February 23, 2026, and assigned the request number  EOUSA-2026-002267. EOUSA also invoked the "unusual circumstances" provision of FOIA and claimed it was entitled to 10 additional business days to process FPF's Second Request.

33. On March 5, 2026, FPF submitted its third request ("Third Request") to OLC and EOUSA via portal, seeking "*Copies of all Justice Department memos concerning the Privacy Protection Act of 1980(PPA), including memos discussing when the PPA does not apply. This request includes, but is not limited to, the memos discussed by Assistant U.S. Attorney Gordon D. Kromberg on February 20, 2026, before Magistrate Judge William B. Porter of the Eastern*

*District of Virginia, during which Kromberg states: "in the WikiLeaks case, we got multiple search warrants and we had multiple memos from the Department of Justice discussing the PPA, and we were advised between 2013 and 2020 that the PPA did not apply when there was a reason to believe that the individual who maintained the information was involved in the offense."*

34. On March 16, 2026, via email EOUSA acknowledged receipt of FPF's Third Request and assigned tracking number EOUSA-2026-002494. EOUSA also claimed unusual circumstances justified the agency taking an additional 10 business days to process the request.

35. On March 13, OLC acknowledged receipt of FPF's Third Request via email and assigned tracking number FY26-134.

36. FPF followed up on its requests on the following dates: May 18, 2026, and May 29, 2026, via email.

37. To date, DOJ has not provided documents in response to any of FPF's requests. Nor has the agency provided any justification for failing to provide documents within FOIA's deadlines.

<u>**COUNT ONE:**</u>

***Violation of Statutory Deadline***

38. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

39. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information.  FOIA reflects a "profound national commitment

to ensuring an open Government," and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

40. The FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i).

41. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

42. More than four months have passed since January 22, 2026, the date Plaintiff submitted its First Request FOIA-2026-01340 to DOJ, yet the agency has provided no documents in response to or otherwise made a determination in response to FPF's First Request. Twenty working days from January 22, 2026, was February 23, 2026.

43. More than three months have passed since February 23, 2026, the date Plaintiff submitted its Second Request EOUSA-2026-002267 & PRAO-FOIA-26-005 to DOJ, yet the agency has not provided documents in response to or otherwise made a determination in response to FPF's Second Request. Twenty working days from February 23, 2026, was March 23, 2026.

44. More than two months have passed since March 5, 2026, the date Plaintiff submitted its Third Request EOUSA-2026-002494 & [OLC] FY26-134 to DOJ, and the agency has not provided documents in response to or otherwise made a determination in response to FPF's Third Request. Twenty working days from March 5, 2026, was April 2, 2026.

45. Only EOUSA has invoked unusual circumstances extending its deadline to respond as a DOJ component to those portions of FPF's Second and Third requests regarding records in its possession and control. Thirty working days from the submission of plaintiff's Second

Request was April 6, 2026. Thirty working days from the submission of Plaintiff's Third Request was April 16, 2026.

46. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its First, Second, and Third Requests as to each responding component of DOJ, FPF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT TWO

### *Unlawful Withholding of Agency Records*

47. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48. Defendant DOJ has failed to search for records responsive to Plaintiff's FOIA Request.

49. Defendant's failure to make a determination on or disclose the documents requested in First and Second Requests within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

50. Defendant's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the Trump Administration's efforts to eliminate essential privacy guardrails.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

i. Enter an order declaring that Defendant wrongfully withheld requested agency documents;

ii. Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iii.   Maintain jurisdiction over this action until Defendant is in compliance with the FOIA, the

Administrative Procedure Act, and every order of this Court;

iv.   Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

v.   Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on June 8, 2026.

s/ *Ginger P. McCall*_____
Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642
*Attorneys for Plaintiff*